LARRY TYRONE CARR *v.* STATE OF MARYLAND

[No. 1015, September Term, 1977.]

*Decided June 8, 1978.*

The cause was argued before THOMPSON, DAVIDSON and MASON, JJ.

*Jonathan A. Azrael, Assigned Public Defender,* for appellant.

*W. Timothy Finan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Joseph Fleischmann, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

The appellant, Larry Tyrone Carr, was convicted by a jury in the Criminal Court of Baltimore of assault with intent to murder, robbery with a deadly weapon, and use of a handgun in the commission of a crime of violence. Concurrent terms of 15, 20, and 5 years, respectively, were imposed on the charges. On appeal two questions are presented for our determination: (1) whether appellant was entitled to inspect a prior written statement of a state witness for use in cross-examination; and (2) whether the trial judge should have granted a new trial on the basis of a post trial recantation by a State's witness.

## I The Facts

During the early morning hours of May 27, 1975, Kirk McCall, Raymond Oliver, and Larry Lewis were on their way to purchase some narcotics when McCall was robbed and shot. McCall testified that after he and his companions decided to purchase the narcotics, McCall went home to obtain the necessary funds. When he rejoined his friends appellant was present and Oliver informed McCall that appellant would supply the narcotics. McCall gave sixty-five dollars to Oliver who gave it to appellant. The group then proceeded to procure the drugs. After they had been walking for approximately 15 minutes, McCall became disenchanted and asked for the return of his money. Appellant complied but as McCall turned to leave appellant produced a weapon and demanded the money. McCall, who had a cane in his hand, turned and struck appellant in the face. As McCall turned to run appellant shot

him in the back, took the money from the victim's pocket, and fled.

Although appellant, who was arrested two months after the crimes were committed, could not remember where he was at the time, he testified that he was not with McCall. To support this claim he produced two witnesses, Norman Johnson and Marion Harris. Johnson's house was less than one-half block away from the location of the crimes, and on the night in question Johnson, Harris, and a few other friends were talking in front of Johnson's house. At approximately 12:30 a.m. McCall and another person, who neither Johnson nor Harris knew, stopped on their way down the street and conversed for a short period of time. About a minute and a half after McCall and his companion had left, Johnson heard a shot. He turned and saw McCall lying in the street. Seconds later the man who had accompanied McCall was standing over him. At no time, either before or after the shooting, did Johnson or Harris see appellant.

## II Production of Oliver's Prior Statement

McCall testified he did not know Johnson or Harris and had not stopped to talk to them on the night of the shooting. To corroborate his testimony the State called Oliver. His version of the shooting was essentially the same as McCall's although it did differ in unimportant details. During cross-examination of Oliver the defense elicited that he had given a prior written statement to the police. Defense counsel attempted to question Oliver about the details of the statement but the State objected and the trial judge ruled that if counsel wanted to use the statement, he would have to quote from it. Defense counsel responded by stating that although he had information as to the statement's contents, he did not have a copy. When he asked the court to require production of the statement the court refused ruling appellant was entitled to the statement only if it were exculpatory; and he was not entitled to the statement if it were only inconsistent. The court did note that the prosecutor could voluntarily furnish counsel with a copy but the prosecutor refused commenting, "It's too late for that crap."

In arguing that the trial judge erred in refusing to require production of Oliver's statement, appellant asks this Court to hold that an accused is entitled, as a matter of right, to the prior statements of State witnesses after they have testified on direct examination. Essentially this is the rule adopted by the Supreme Court in *Jencks v. United States,* 353 U. S. 657, 77 S. Ct. 1007, 1 L.Ed.2d 1103 (1957). The Supreme Court's decision in *Jencks* was based on its supervisory powers over the federal courts and is applicable only to federal criminal prosecutions. *See Palermo v. United States,* 360 U. S. 343, 345, 79 S. Ct. 1217, 1221, 3 L.Ed.2d 1287 (1959).[1] While automatic disclosure is not constitutionally required, a number of jurisdictions recognize the right of an accused to inspect the statement of a prosecution witness for purposes of cross-examination or impeachment. This rule has been adopted by judicial decision, *See* Annot. 7 A.L.R.3d 181 (1966), by statute, *See* Alaska Stat. § 12.45.060 (1977); Ark. Stat. Ann. § 43-2011.3 (b) (1977 Repl. Vol.); Kan. Crim. Code and Code of Crim. Proc. § 22-3213 (2) (1974); Tenn. Code Ann. § 40-2446 (1977 Supp.), or by rule, *See* Haw. R. Cr. P. 17 (h); Ky. R. Cr. P. 7.26 (1). An almost equal number of jurisdictions do not allow an accused to examine a prior statement of a prosecution witness as a matter of right. These jurisdictions generally recognize that the grant or denial of a request for production of a prior statement is within the sound discretion of the trial judge. *See* Annot. 7 A.L.R.3d 181, 198 (1966).[2]

The Court of Appeals in *McKenzie v. State,* 236 Md. 597, 204 A. 2d 678 (1964) declined to adopt the rule urged by appellant here, holding instead that a request for the production of statements within the control of the State is within the discretion of the trial judge. *Id.,* 236 Md. at 602, 204 A. 2d at 680-681. *See also, Couser v. State,* 282 Md. 125, 140, 383 A. 2d 389, 397 (1978); *Veney v. State,* 251 Md. 159,

---

1. Four justices concurring in *Palermo* did note that an accused's sixth amendment rights were very close to the surface of the Court's decision in *Jencks.* 360 U. S. at 362-363, 79 S. Ct. at 1229-1230. The Jencks Act (18 U.S.C. § 3500) now governs the question in federal courts.

2. The original annotation shows that a majority of jurisdictions follow the discretionary rule. When the cases cited in the supplement to the annotation and the statutory changes previously cited are considered, it appears that the jurisdictions following each rule are now approximately equal.

165, 246 A. 2d 608, 612 (1968), *cert. denied,* 394 U. S. 948, 89 S. Ct. 1284 (1969). The requirement of a proper foundation was recognized in *Couser v. State, supra,* 282 Md. at 140, 383 A. 2d at 398, where the Court citing *McKenzie* noted "where inadequate reasons are assigned for disclosure, the request is properly denied as being in the nature of a 'fishing expedition.'"

The precise foundation that needs to be laid before an appellate court will review the trial court's denial of a request for production is a matter of some dispute. Some jurisdictions which do not allow an accused to examine the prior statement of a witness as a matter of right have a twofold requirement: (1) there must be a prior statement which is in control of the prosecution; and (2) the witness must deny having made the statement or the accused must show it is inconsistent in some material respect with the witness's testimony. *See Cooks v. State,* 50 Ala. App. 49, 276 So. 2d 634, 638, *cert. denied,* 290 Ala. 363, 276 So. 2d 640 (1973); *State v. Lee,* 311 So. 2d 876, 879 (La. 1975); *Knowles v. State,* 341 So. 2d 913, 916 (Miss. 1977). As it is often impossible, as a practical matter, for the accused to show a statement is inconsistent without knowing what it contains, a number of courts have criticized this requirement. *See, e.g., State v. Tate,* 294 N. C. 189, 239 S.E.2d 821, 825 (1978); *State v. White,* 15 Ohio St.2d 146, 239 N.E.2d 65, 73 (1968). These courts require that the trial judge, when requested by the accused, examine the statement *in camera* to see if it contains any inconsistencies.

In the instant case we need not decide what elements the accused is required to show before we would be willing to find an abuse of discretion, because under either test appellant failed to demonstrate he was entitled to the statement. Although defense counsel established that Oliver had made a prior written statement and the statement was in the possession of the prosecutor, he did not establish any material inconsistencies in Oliver's testimony or request the trial judge to examine the statement. Consequently, we see no basis for finding the trial judge abused his discretion.

We think it is important to note that appellant was not prejudiced by the trial judge's denial of his request. Prior to

making the request for production, defense counsel acknowledged that he had "information as to what is contained in the statement." After his request was denied, defense counsel proceeded to ask Oliver a number of questions in which he quoted from Oliver's prior statement. In effect, defense counsel was able to cross-examine on the alleged inconsistencies even though he did not have the actual statement in his hands. We see no error.

### III Motion for a New Trial

Following the finding òf guilt by the jury, appellant moved for a new trial and produced an affidavit signed by Oliver stating that the testimony he gave at trial was false and was given "under the threat of persecution and arrest by the State's Attorney's Office. . . ." The trial judge took the affidavit into consideration but quite properly informed defense counsel it was his, and not the State's, responsibility to produce Oliver if it was his desire that the court should hear the witness. Appellant now contends the trial judge erred. We disagree.

The standard for reviewing the propriety of the denial of a motion for a new trial was succinctly stated in *Jones v. State,* 16 Md. App. 472, 477, 298 A. 2d 483, 486, *cert. denied,* 268 Md. 750 (1973):

> "It is, of course, well established that the granting or denial of a motion for a new trial lies within the sound discretion of the trial court and the action of the trial court upon such a motion will not be disturbed on appeal except under the most extraordinary and compelling reasons."

In the instant case the trial judge received and considered Oliver's affidavit but stated he did not consider it worthy of belief.[3] In so stating the trial judge noted that Oliver's trial testimony was consistent in all material respects to that of McCall even though he was sequestered during McCall's

3. Although appellant argues that the trial judge did not state whether or not he believed the affidavit to be false, a reading of the exchange between court and counsel clearly indicates the trial judge did not believe Oliver's recantation.

484

testimony and was rigorously cross-examined. We note, as did the trial judge, that post-trial recantations of witnesses are looked on with the utmost suspicion. *See, e.g., United States v. Johnson,* 487 F. 2d 1278 (4th Cir. 1973). Under these circumstances we see no abuse of discretion. Unless it is all but certain that a new trial would be granted if the testimony were heard, a trial judge can refuse to hear witnesses on a motion for a new trial. *Givner v. State,* 208 Md. 1, 115 A. 2d 714 (1955). This applies even where the moving party has fully performed his duty to subpoena witnesses he desires the court to hear.

*Judgments affirmed.*
*Costs to be paid by appellant.*